# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; and DOES 1-10.

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

FRANK AMATO and RGB COIN LTD.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco County Superior Court
Civic Center Courthouse
400 McAllister St., San Francisco, CA 94102

CASE NUMBER: *(Número del Caso):*
CGC-19-581267

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
J. Noah Hagey; BraunHagey & Borden LLP; 351 California Street, 10th Floor, San Francisco, CA 94104. Telephone: (415) 599-0210

DATE: *(Fecha)* 12/04/2019 DEC 04 2019 CLERK OF THE COURT Clerk, by *(Secretario)* DE LA VEGA-NAVARRO, Rossaly , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010).)*

[SEAL]
SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO EUREKA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*

J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Andrew Levine, Esq. (SBN: 278246)
levine@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFFS
FRANK AMATO and RGB COIN LTD.

FILED
San Francisco County Superior Court
DEC 04 2019
CLERK OF THE COURT
BY: Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

FRANK AMATO and RGB COIN LTD.,

Plaintiffs,

v.

HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; and DOES 1-10,

Defendants.

**Case No.** CGC-19-581267

**COMPLAINT FOR (1) FRAUDULENT MISPREPRESENTATION AND/OR CONCEALMENT; (2) BREACH OF CONTRACT; (3) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (4) QUANTUM MERUIT AND/OR UNJUST ENRICHMENT; (5) NEGLIGENT MISREPRESENTATION; AND (6) PROMISSORY ESTOPPEL**

**JURY TRIAL REQUESTED**

Plaintiffs Frank Amato and RGB Coin Ltd. ("RGB Coin") (together, for convenience, "Plaintiff") bring this action for fraud and related causes of action against Defendants HDR Global Trading Limited d/b/a BitMEX ("BitMEX" or the "Company") and Arthur Hayes (collectively, "Defendants"), and allege as follows:

## SUMMARY OF CLAIMS

1. Plaintiff Frank Amato was the first seed funder of what has become the world's largest cryptocurrency trading platform, Defendant BitMEX. Defendants induced Plaintiff's investment by promising to convert it into equity upon BitMEX's first fundraising event pursuant to a Simple Agreement for Future Equity (the "SAFE"). Defendants however failed to honor those promises and, despite raising multiple rounds of new financing, have sought to conceal information from Plaintiff and to prevent recognition of his equity, conservatively estimated to be worth in excess of $50,000,000.

2. Plaintiff's investment was made in June 2015 when Defendants had few resources and no other sources of funding. Defendant Arthur Hayes repeatedly pitched Plaintiff to invest in BitMEX's nascent and struggling cryptocurrency exchange platform. BitMEX needed money to pay engineers, procure equipment, develop the necessary algorithms, and to help promote the platform. Defendants had been unable to raise money from traditional investors and the platform was at risk of failing.

3. After substantial discussion, Plaintiff agreed to make an "angel" investment in exchange for future equity. Defendants promised Plaintiff that with funding they would be able to fully launch the platform and attract additional investors, thus triggering Plaintiff's equity conversion. Because such investments are risky, Plaintiff was promised a substantial premium in return for the high risk that the business might fail. Plaintiff accordingly transferred $30,000 to BitMEX in exchange for a promised near-term conversion into equity.

4. Defendants however mislead Plaintiff. Just a few months after the investment, Defendants received another $30,000 investment at a $600,000 valuation, representing 5% of the company, from startup accelerator SOSV, a multi-stage venture capital investor with offices in San Francisco. Even though Defendants knew that SOSV's investment triggered Plaintiff's equity

conversion, Defendants withheld that information and took efforts to conceal it from Plaintiff. Relying on Defendants' earlier promises that he would be an equity-holder, Plaintiff assumed that he was already on BitMEX's capitalization table, as he continued to receive Monthly Reports about BitMEX's performance. When Plaintiff finally asked about the SOSV investment and subsequent Equity Events in November of 2018, Defendants provided false information to him about those events and the status of his equity.

5. BitMEX is now the largest and most liquid Bitcoin-to-USD market in the world, trading roughly $6.31 billion in value through its platform every 24 hours, $88.29 billion every month, and over $1.06 trillion in the last year alone. Despite taking on the incredible risk and becoming BitMEX's *first* outside investor when no one else understood its potential, Defendants seek to deny Plaintiff the benefit of his bargain. Having accepted Plaintiff's angel investment which made BitMEX's success possible, Defendants decided to cut him out of any of the economics of the Company.

6. Through this action, Plaintiffs seek damages representing the value of their equity interest in BitMEX, which is conservatively estimated to exceed $50,000,000, together with punitive damages of $250,000,000. Plaintiffs also seek injunctive relief and other remedies, together with their attorneys' fees and costs.

## PARTIES

7. Plaintiff Frank Amato is an investment professional who resides in Akron, Ohio.

8. Plaintiff RGB Coin Ltd. is a limited liability corporation organized in Ohio. RGB Coin holds a 5% interest in the SAFE through assignment, as expressly permitted under the SAFE. Member interests in RGB Coin are held by Plaintiffs and another member, who is a citizen of Portugal.

9. Defendant HDR Global Trading Limited, which does business as, and operates in all jurisdictions, including California, under the trade name "BitMEX", is a private closely-held entity that wholly owns the BitMEX website and cryptocurrency exchange and derivative trading platform. According to its own judicial filings, HDR Global Trading Limited "owns and operates a leading and prominent cryptocurrency-based virtual trading platform marketed to millions of

consumers around the world. [HDR Global Trading Limited] has rights in the BITMEX mark through its registration of the mark with the European Union Intellectual Property Organization ("EUIPO") (e.g. Reg. No. 16462327, registered Nov. 8, 2017)." BitMEX also filed for, and was granted allowance of, a service mark within the United States under the mark "BitMEX", on September 14, 2017, and April 23, 2019, respectively.

10. Defendant BitMEX purports to be incorporated in the Republic of Seychelles, although its home base of operations is in San Francisco, including the nerve center of its engineering, technology, security and related infrastructure. BitMEX's Bay Area offices also house its largest number of employees worldwide, according to its own LinkedIn demographics. BitMEX's Bay Area contacts, which are substantial and systematic, include, without limitation:

a. BitMEX executed the SAFE under California law with Frank Amato, a U.S. citizen, in exchange for his $30,000 "pre-seed" investment. A true and correct copy of the SAFE is attached as **Exhibit 1**.

b. BitMEX has permanent physical offices and employees in San Francisco and, on information and belief, in Palo Alto. BitMEX's San Francisco Office is located at 301 Battery St., 4th Fl., San Francisco, CA, 94111 and/or 340 Bannon Street, 2nd Floor, San Francisco, California.

c. BitMEX also employs at least 50 employees or trade workers (such as software engineers, security professionals and similar persons) within the San Francisco Bay Area.

d. BitMEX lists its Bay Area staff and employees on its company profile page on LinkedIn as of October 30, 2019.[1]

e. BitMEX's Bay Area employees include BitMEX's Vice President and Head of Products; its Vice President and Head of BitMEX Ventures, a BitMEX subsidiary; its Vice President of Engineering; its Vice President and Head of Security; its Head of Development and Operations; its Head of Security Assurance & Technical Program Management; its Head of Data Science; its Head of User Experience; its Director of People; its Communications Director; a Security Engineering Manager of Application Security; a Senior Security Program Manager; a

[1] *See* https://www.linkedin.com/company/bitmex/people/?facetGeoRegion=us%3A84.

Lead Data Engineer; a Senior Systems Engineer; two Senior Software Engineers; a Senior Technical Investigator; a Senior Product Manager; a Security Engineering Manager; an Engineering Manager; a Senior Product Designer; a Senior Visual Designer; an IT Manager; two Project Managers; a Data Science Manager; a Quality Assurance Manager; a Senior Frontend Engineer; three Senior Software Engineers; a Senior Software Engineer for mobile devices; a Senior IT Support Engineer; two Talent Acquisition Specialists; four Security Engineers; a Platform Security Engineer; a Site Reliability Engineer; a Kubernetes program quality assurance pilot; two Kubernetes Engineers; a Product Engineer; an Automation Engineer; an IT Infrastructure Engineer; a Software Engineer; a Product, Design, and User-Interface Engineer; a Recruiting and Hiring Officer; and an Information Technologies Specialist.

f. BitMEX also lists, as of October 8, 2019, the following job openings on LinkedIn as being available for hiring in the San Francisco Bay Area: a Director of Corporate Engineering; a Senior Human Resources Business Partner; a Senior IT Support Engineer; and an HR Operations Specialist.

g. BitMEX also lists, as of November 26, 2019, the following job openings on angel.co as being available in San Francisco under the heading "Jobs at HDR Global Trading": a Director of Corporate Engineering; a Technical Program Manager (Agile SME); a Senior Software Engineer (Web); and a Senior Software Engineer (Mobile).

h. BitMEX also owns BitMEX Ventures, its corporate venture arm, through which it makes equity investments into other startup businesses. Upon information and belief, BitMEX Ventures also regularly and systematically conducts business in San Francisco.

11. Defendant Arthur Hayes is a U.S. citizen and CEO of BitMEX. Mr. Hayes regularly and systematically conducts business in California and the U.S. on behalf of BitMEX, including by managing and directing BitMEX's San Francisco Bay Area-based operations, with offices at 301 Battery St., 4th Fl., San Francisco, CA, 94111 and/or 340 Bannon Street, 2nd Floor, San Francisco, California.

a. Hayes also regularly attends, on information and belief, cryptocurrency-related conferences and speaking events in California and within the San Francisco Bay Area. By

way of example, Mr. Hayes hosted and was a keynote speaker at the Distribution 2018 conference held in San Francisco in July 2018.

b. Hayes induced Plaintiff to enter the SAFE under California law and intended to be bound by California's rules and procedures and, as such, personally and intentionally availed himself of the State's benefits and privileges.

12. Defendants Does 1 through 10 are agents or principals of Defendants who, on Information and Belief, aided and abetted Defendants in the making of the fraudulent statements or omissions to Plaintiff. The true names and capacities of the defendants named herein as Does 1 through 10 are unknown to Plaintiffs, who therefore sue them under these fictitious names. Plaintiffs will amend this Complaint to add their true names and capacities when they become known.

## JURISDICTION

13. The claims and amounts in controversy satisfy the jurisdictional limit for an unlimited civil case under the California Code of Civil Procedure.

14. Jurisdiction is proper in California in accordance with Cal. Civ. Pro. § 410.10 as BitMEX has systematic contacts with the Bay Area, including, but not limited to, multiple office locations and dozens of employees in San Francisco County.

15. Jurisdiction is also proper as to Defendant Arthur Hayes in accordance with Cal. Civ. Pro. § 410.10 as Defendant Hayes directs BitMEX's operations in California, and regularly attends conferences in California relating to both BitMEX and cryptocurrencies.

16. Further, the SAFE specifically provides that "[a]ll rights and obligations hereunder will be governed by the laws of the State of California, without regard to the conflicts of law provisions of such jurisdiction." SAFE §5(f).

## FACTS

### A. Defendants Struggle to Raise Outside Investment for BitMEX

17. Before Plaintiff's investment, BitMEX was a novel idea – a global derivatives exchange for the growing bitcoin community. Notwithstanding its eventual success, for some time after its launch the exchange lacked backers, funding or significant traffic.

18. Defendant Hayes needed cash to help engineer the platform and pay for basic things like equipment and facilities. Hayes had some experience in the financial industry, but a scant track record of launching or running a fintech business and almost no experience heading his own firm. Hayes also had no major institutional backers and was unable to raise funding from traditional sources.

19. Upon information and belief, Defendants had not raised any outside money at all, despite concerted efforts to obtain funding from different sources until Plaintiff's investment.

**B. Defendants Solicit Plaintiff to Invest in BitMEX**

20. In mid-2014, Defendant Hayes was introduced to Plaintiff, an angel investor with experience in FinTech platforms.

21. Over the next 11 months, Defendants actively and continuously solicited Plaintiff's investment into BitMEX, which Defendants consistently referred to as an "equity" investment.

22. From the outset, Defendants stated that they were seeking "equity investors." For example, on August 18, 2014, Defendants wrote to Plaintiff via LinkedIn messenger, seeking to secure his funding and providing information concerning the timing of BitMEX's intended "equity financing", then purportedly set for September or October 2014.

23. Beginning on September 11, 2014, and repeatedly thereafter, Defendants memorialized in emails their intention that Plaintiff would receive equity of 0.5% in BitMEX in exchange for an early investment in the platform.

24. Plaintiff and Defendants continued to correspond over the next few months. On January 18, 2015, after the holidays, Defendant Hayes again reached out to Plaintiff to ask if Plaintiff was "still interested in making an investment in BitMEX" and noting that "[w]e are putting together a round of private investors currently."

25. Later that month, at the Inside Bitcoins Singapore event on January 29-30, 2015, Defendant Hayes showed Plaintiff a demonstration of the BitMEX trading platform and told him that the Company needed funding to further develop the platform's proprietary trading algorithm. Samuel Reed, a co-founder of BitMEX and its CTO, was present at these meetings.

26. Defendants and Plaintiff continued occasional correspondence over the subsequent few months. On March 20, 2015, Defendant Hayes wrote Plaintiff to move their discussion forward, again representing that Plaintiff would get equity shares for his investment on the same terms as the BitMEX founders:

> **Arthur Hayes <arthur@bitmex.com>** Mar 20, 2015, 7:42 AM
>
> to me
>
> This has been a long process. I am going to get the docs drawn up soon, but before I start the clock on lawyers just want to make sure we are on the same page. We are looking to sell common equity shares, so you will have same rights as us. Let me know if you have an issue with that. And are you still good for $50k USD?
>
> Regards,
>
> Arthur Hayes
> Co-Founder & CEO

27. Plaintiff confirmed his interest but also asked if he could instead invest at $30,000, and sought confirmation regarding Defendants' initial valuation expectations, inquiring: "What initial valuation will you have on the company? And will initial investors be capped at that valuation?"

28. In response, Defendants confirmed the valuation was still $10 million dollars post money (i.e., including whatever value the current round of investments contribute to BitMEX).

29. Plaintiff thereafter inquired whether "capped" means "locked in at the initial valuation," such that "initial investors [would] not be diluted in future funding rounds." In response, Defendants stated that the antidilution provisions to protect Plaintiff's existing equity in an initial financing "have not been finalized yet", but that Defendants Hayes was speaking with BitMEX's attorneys and should have an answer for Plaintiff next week.

30. On March 25, 2015, Defendants told Plaintiff that his investment would buy 0.5% of BitMEX's equity for $50,000, with the same rights as the two other founders of BitMEX—which was consistent with Defendant Hayes's March 20, 2015 email. Further, Defendant Hayes assured

Plaintiff that he would not be diluted in future funding rounds because Plaintiff could buy more shares to retain an equivalent ownership stake in BitMEX "in our next round of financing":

> Hi,
>
> After speaking with the lawyers, this is how we would like to proceed:
>
> 1. The offering will be common stock with no special rights attached. Basically you own the same type and class of equity that myself and the other two founders have. There will be no anti-dilution provision. However, in our next round of financing we will be looking towards existing investors and you will have the opportunity to invest to retain your % ownership of the company.
>
> 2. If that is agreeable we will get the Share Purchase Agreement drawn up. This will outline the share sale in the Seychelles entity. You will be buying 0.50% of the Seychelles entity for $50,000.

31. Defendants represented to Plaintiff that they would immediately notify him of additional financing and capital raises in BitMEX so that he would have an opportunity to retain his ownership percentage.

32. Defendant Hayes wrote Plaintiff yet again on April 13, 2015 to confirm that he would invest in BitMEX, asking "Wanted to see where you are on the investment. Can I start to get paperwork drawn up?"

33. Plaintiff responded that he'd like to start the paperwork and lower his investment to $30,000. Defendant Hayes informed Plaintiff that he was "getting a Republic of Seychelles SPA [Sales and Purchase Agreement for the Shares] drawn up now."

34. Two days later, on April 16, 2015, Defendants wrote again to confirm that there would be one upcoming round of investing, stating "[w]e have some additional interest and are going to try and roll this up into one round. Sorry for the back and forth. I'll keep you updated on how we are progressing."

35. In May 2015, Defendants emailed Plaintiff what they represented to be a slightly different set of proposed terms. Instead of a purchase agreement for shares, Defendants proposed a "convertible financing structure", and reassured Plaintiff that his "[i]nvestment in this structure will convert to preferred shares at [BitMEX's] next round of financing."

36. Defendant Hayes followed up with the "relevant terms" a week later, again representing and reassuring Plaintiff that his investment would convert to preferred shares at "our next equity financing round."

> The relevant terms are:
>
> 1. Investment will convert to preference shares at our next equity financing round
> 2. Shares will convert at a 20% discount to the per share price
> 3. After converting your ownership stake is capped at 0.50% based on a $30,000 USD investment.

37. Defendant Hayes' repeated assurances that Plaintiff would receive equity at the "next round of financing" was intended to assure and induce Plaintiff into accepting a Simple Agreement for Future Equity instead of the Sales and Purchase Agreement for shares, in a manner indicating that they were not materially different instruments.

38. Two days later, Defendant Hayes sent Plaintiff the SAFE, and Plaintiff replied asking for a few days to go over it. Soon thereafter, Plaintiff confirmed with Defendant Hayes that he was investing in the initial round, "pre-Series A", inquired as to the current valuation of the company, and asked how the equity-cap works in terms of his ownership percentage of BitMEX.

39. Defendant Hayes responded the same day, confirming that Plaintiff will own no more than 0.5% of BitMEX, and that his "shares will convert at the next financing round, which will be our first financing round."

> Your shares will convert at the next financing round, which will be our first financing round. We are targeting a $8-$9mm pre-money valuation for our next round. We are planning on attending an accelerator called China Accelerator, the goal is to use their China expertise to bring our product offering into the China market and greatly increase our user base and trading volumes. We plan to complete the round shortly after completion of the program, which ends in November.
>
> Your math is correct. Basically below a net valuation of $6mm (after the 20% discount), you are capped at owning no more than 0.50% of the company.
>
> Regards,

40. As discussed below, Defendants representations and repeated assurances that Plaintiff's investment would entitle him to equity in BitMEX were either knowingly false, or were recklessly made to induce Plaintiff to invest money that Defendants never intended to allow to become equity in the business.

41. In reliance on Defendants' representations, Plaintiff executed the SAFE and then, on June 26, 2015, wired Defendants $30,000.

42. On information and belief, without the infusion of cash, Defendants would not have been able to pay their bills or continue to grow the platform. As a result, BitMEX likely would not have been the platform it is today without Plaintiff's generous and business-saving investment.

**C. The SAFE Entitles Plaintiff to Equity in BitMEX**

43. As the parties' negotiations make clear, Defendants repeatedly represented and Plaintiff understood that he would have broad rights to be treated as an equity holder based on Defendants' subsequent capital raise, which was planned at the time for late 2015.

44. The SAFE memorialized this understanding. Its preamble reads:

> **HDR GLOBAL TRADING LIMITED**
>
> **SAFE**
> **(Simple Agreement for Future Equity)**
>
> THIS CERTIFIES THAT in exchange for the payment by Frank Amato (the "**Investor**") of $30,000 USD (the "**Purchase Amount**") on or about June 15th, 2015, HDR Global Trading Limited, a limited liability corporation incorporated in the Republic of Seychelles (the "**Company**"), hereby issues to the Investor the right to certain shares of the Company's share capital, subject to the terms set forth below.

45. The SAFE's "conversion" provision is further set forth in § 1(a) "Equity Financing", and reads as follows:

> **1. *Events***
>
> (a) **Equity Financing**. If there is an Equity Financing before the expiration or termination of this instrument, the Company will automatically issue to the Investor a number of shares of Safe Preferred Shares equal to the Purchase Amount divided by the Discount Price. In any event, the member of shares of Safe Preferred Shares issued to the Investor shall not exceed 0.50% of the Company's issued and outstanding share capital on a fully-diluted and as converted basis.

"Equity Financing", in turn, is further defined under § 2 to "mean a bona fide transaction or series of transactions with the principal purpose of raising capital, pursuant to which the Company issues and sells Preferred Shares at a fixed pre-money valuation."

46. Paragraph 5(c) of the SAFE provides that Plaintiff's rights as a shareholder of the Company, e.g., notice, information, subscription, voting, consent, and other rights, are triggered automatically upon the occurrence of an Equity Financing.

47. Paragraph 5(d) of the SAFE permits Plaintiff to assign his rights under the SAFE to any entity controlled by Plaintiff without the Company's consent.

48. Paragraph 5(f) of the SAFE provides that "All rights and obligations hereunder will be governed by the laws of the State of California, without regard to the conflicts of law provisions of such jurisdiction."

49. Importantly, the SAFE does not contain any integration clause because it was the parties' objective to ensure that their pre-contractual discussions would help guide the interpretation and enforcement of their contract.

50. Plaintiff was the first investor in BitMEX, as confirmed by Defendant Hayes.

51. Upon information and belief, Defendants never intended to convert Plaintiff's investment in BitMEX into equity in the Company, but instead intended to use Plaintiff's investment to finance BitMEX's operations and development without compensating Plaintiff in any way.

**D. Plaintiff's Investment Helps Fund Key Developments at BitMEX that Propel Its Success**

52. Defendants told Plaintiff that the purpose of his investment would be to facilitate the development of BitMEX's automated algorithm for trading on the platform, which allows traders to trade at up to 100x leverage while mitigating any risk to BitMEX. The availability of this high leverage trading is what drove the Company to its dizzying heights today.

53. Defendants extolled the importance of this feature to the Company's growth in BitMEX's November 3, 2015 "October Monthly Report": "This month we rolled out the world's

first 100x leveraged daily expiring Bitcoin / USD futures contract. It has become our most popular product, and driven a flood of customers to BitMEX."

54. The number of traders using BitMEX as a trading platform *exploded* late 2015 as BitMEX first started to offer higher leverage. And industry press attributed the platform's "turning point" and growth in market share to the introduction of increased leverage, which would not have been possible without Plaintiff's investment:

> Initially BitMEX struggled, as it failed to get enough liquidity to attract traders. For most of 2015, Hayes says, trade volumes on BitMEX were "pathetic", but he insists he never considered throwing in the towel. The turning point came in October 2015 when BitMEX raised its leverage limit from 3x to 100x, effectively allowing users to bet on the cryptocurrency with heavily leveraged positions. This gave BitMEX a much-needed liquidity boost and helped it gain market share. (*"$800 Billion: The Story of Crypto Derivatives Exchange BitMEX and Its CES Arthur Hayes*", CryptoGlobe.com, Sept. 15, 2018, available at https://www.cryptoglobe.com/latest/2018/09/800-billion-the-story-of-crypto-derivatives-exchange-bitmex-and-its-ceo-arthus-hayes/.)

**E. Defendants Raise Additional Capital but Fraudulently Withhold that Information from Plaintiff**

55. On information and belief, Defendants entered into additional transaction(s) for the purpose of raising capital between July 1, 2015 and December 31, 2015, as well as at further times unknown to Plaintiff because of Defendants' efforts to conceal. Plaintiff was unaware of these financings until just recently.

56. Defendants failed to disclose these Equity Financings to Plaintiff and have falsely denied that they trigger Plaintiff's conversion right under the SAFE, depriving Plaintiff of his rights as a shareholder of the Company.

**1. Defendants' Undisclosed Equity Financing With SOSV**

57. On information and belief, sometime between July and December 2015, Defendants issued equity to SOSV (a multi-stage venture capital investment firm with offices in San Francisco) in exchange for funding and services provided by its venture fund accelerator program, Chinaccelerator, run by General Partner William Bao Bean.

58. While Defendants failed to inform Plaintiff of this Equity Financing and falsely deny to this day that SOSV's investment in BitMEX triggered Plaintiff's conversion right under the

SAFE, other evidence shows that Defendants did in fact raise capital from SOSV and its Chinaaccelerator program in exchange for equity in the Company. Defendants representations to the contrary are false and designed to fraudulently induce Plaintiff to refrain from exercising his rights as shareholder of the Company.

59. By way of example, on or about February 1, 2019, Nick Plante, the Director of Technology at SOSV, disclosed that Chinaccelerator/SOSV incubated, accelerated, and provided office space for BitMEX back in 2015 and invested in BitMEX at an undisclosed valuation.

60. Mr. Plante's representation is consistent with a medium.com blog post from Sean O'Sullivan, the Managing General Partner of SOSV, who wrote in May2018: "I am an investor in BitMEX[.]"

61. Other online sources have likewise reported SOSV/Chinaccelerator's equity financing of BitMEX. For example:

62. As of October 8, 2019, Crunchbase lists two funding rounds of BitMEX that occurred after the SAFE was executed: a July 18, 2015 "Seed Round" with SOSV and Chinaccelerator; and a July 15, 2015 Funding Round with "G an M Capone Trust."

63. As of October 8, 2019, the Wikipedia page for BitMEX states that "BitMEX completed a SAFE round of investment in July 2015 then shortly after was inducted into SOSV batch 8 china accelerator program where it sold equity in exchange for labour and financing."

64. As of October 8, 2019, both the SOSV and Chinaccelerator websites list BitMEX as one of their portfolio companies in the "Growth Round" of fundraising. (Sometime thereafter, both SOSV and Chinaccelerator changed their websites to categorize BitMEX as a company in their "Accelerator Round.")


BitMEX

BitMEX is a financial trading platform enabling open access to global markets for retail investors through an easy to use interface and suite of tailored products and tools.

BitMEX enables people to profit from from the world's most active financial markets with a focus on the Asia Pacific region.

COMPANY DETAILS

CHINACCELERATOR 08

Growth Round

Hong Kong

http://bitmex.com

FINTECH

BLOCKCHAIN

65. The Twittersphere also reflects SOSV's equity financing of BitMEX. By way of example, on September 11, 2019, on information and belief, Juntao Zhu, the head trader at Hodlnaut, a startup based in Singapore whose business is to loan out cryptocurrencies to traders looking to borrow additional cryptocurrency funding, tweeted a picture of himself and Arthur Hayes, discussing the SOSV investment:

HODLNAUT
@hodlnautdotcom
Follow

Met a guy last night who was laughed by his peers at Wall Street when he wanted to build the first $BTC derivatives market (@BitMEXdotcom), and had to give away 5% for $30k because he didn't have a better funding option. @CryptoHayes is the one having the last laugh #literally



8:58 PM - 11 Sep 2019

66. Following the September 11, 2019 tweet from "HODLNAUT" a Twitter user under the handle of "Guido Capone" tweeted "laugh away" to @williambaobean in response to another user's tweet stating "I'm guessing that the investor who bought 5% for 30k is also laughing." On information and belief, Guido Capone is affiliated with G and M Capone Trust, the investor in the BitMEX funding round reported on Crunchbase. Also on information and belief, @williambaobean is the Twitter handle of William Bao Bean, a General Partner of SOSV and the manager and founder of SOSV's Chinaccelerator program.




**2. Defendants Also Raise Capital from Other Individuals and Entities Besides SOSV**

67. On information and belief, other entities and individuals aside from Chinaccelerator/SOSV invested money into BitMEX for equity in 2015, which is consistent with Defendant Hayes' representations to Plaintiff that the Company would complete its next fundraising round toward the end of 2015.

68. On November 3, 2015, Defendant Hayes wrote in the October Monthly Report for BitMEX that, "On the back of these strong results and continued traction, we will be raising a Pre-Series A round of funding" and that "To further growth in the platform, we are raising $2 million. [. . .] If you are interested in participating or can introduce potential investors, please contact me for pricing and more details." Mr. Hayes also wrote in the same report, "Goals for November. Complete Pre-Series A fundraising round."

69. Defendant Hayes sent the December 7, 2015 email to several addressees who were not included in previous Monthly Report emails, including the following individuals, William Bao Bean and Justin Wong of SOSV, Andrew Delo, Peter Burchhardt, and Guido Capone. On the same day, December 7, 2015, Guido Capone replied all to the November Report email recipients, stating, "Hi Arthur, Thank you for the update. Regards Guido".

<u>Exemplar Prior Report Email Heading</u>:

| | |
|---|---|
| from: | **Arthur Hayes** <arthur@bitmex.com> |
| to: | Samuel Reed <sam@bitmex.com>, Ben Delo <ben@bitmex.com> |
| bcc: | frank[redacted] |
| date: | Nov 2, 2015, 6:38 AM |
| subject: | BitMEX October Report |
| mailed-by: | bitmex.com |
| signed-by: | bitmex.com |

<u>November Report Email Heading:</u>

| | |
|---|---|
| from: | **Arthur Hayes** <arthur@bitmex.com> |
| to: | Ben Delo <ben@bitmex.com>, Samuel Reed <sam@bitmex.com> |
| cc: | William Bao Bean <william.bao.bean@sosventures.com>, Justin Wong <justin.wong@sosventures.com>, Andrew Delo [redacted] Frank Amato [redacted] Peter Burchhardt [redacted] Guido Capone [redacted] |
| date: | Dec 7, 2015, 3:51 AM |
| subject: | BitMEX November Monthly Report |
| mailed-by: | bitmex.com |
| signed-by: | bitmex.com |

70. In subsequent Monthly Reports emails, Defendants reverted to their past practice of hiding investor names in the bcc: line.

71. Additional evidence indicates that individuals such as Guido Capone had invested in BitMEX following Plaintiff's investment. For example, Guido Capone's twitter profile states that he is an angel investor in BitMEX:


**Guido Capone**
@capone_guido

Director : The G and M Capone Trust.
Angel Invested at @indepreserve
@Bitmexdotcom @PanxoraCrypto

72. Guido Capone's twitter also discusses an investment in BitMEX:


**Guido Capone** @capone_guido · Jun 26
Replying to @BitMEXdotcom @Nouriel @CryptoHayes
Take it gents.. it's yours

**Guido Capone**
@capone_guido

Replying to @CryptoHayes and @Quentin__M
I look back at 2014/15 vol. and think about my investment in BitMEX and the ridicule of folk who have blocked me and those who don't return my phone calls/emails/letters. The day has come MF. Take it.it's yours @bendelo @STRML_ @CryptoHayes

73. On information and belief, the individuals copied on Defendant Hayes' December 7, 2015 email, along with others unknown to Plaintiff, are equity investors in BitMEX, whose investment triggered the conversion of Plaintiffs' SAFE to equity in BitMEX. Plaintiff did not know (and to this day, does not know) the details or timing of these transactions. As discussed below, Plaintiff did not know (and could not reasonably have known) that Defendants breached the SAFE until just recently, which is what prompted Plaintiffs to file this action.

### F. Plaintiff Inquires Regarding the Status of His Shares; Defendant Hayes Delays Responding and then Denies that the SAFE Ever Converted

74. On May 14, 2018, Plaintiff met with Defendant Hayes at Consensus, an annual blockchain technology summit. Several news and media outlets such as Forbes picked up on Defendant Arthur Hayes' tweet about his arrival to the conference:

> Meanwhile, the lambos were out in force to welcome attendees to the New York Hilton Midtown as the newly minted Bitcoin wealthy flashed the digital cash.




75. While at the summit, Plaintiff asked Defendant Hayes when his shares in BitMEX would be liquid for sale and trading. Defendant Hayes told Plaintiff that his shares will convert shortly, indicating that Plaintiff actually had no shares in BitMEX, and that Defendants were working on something. Defendant Hayes never updated Plaintiff on the status of his share conversion.

76. On November 9, 2018, Plaintiff sent an email to Defendant Hayes, which reflects his reliance on Defendants' fraudulent concealment of the Equity Financings described above:

> I wanted to ask a question about my initial investment into Bitmex. Because you never did issue shares and my funds are allocated to the SAFE until that time, does that mean I did not participate in any of the amazing things you have done to grow the company? In other words, I had thought my capped ownership of 0.50% was a protective clause [to Bitmex] that will not allow me to own more than that 50 bps in the event you issued equity below a 6 mln valuation.

77. Defendant Hayes replied six minutes later, stating that the SAFE had not triggered to convert into equity and repeating his misrepresentation that "no equity financing has occurred":

> **Arthur Hayes <arthur@bitmex.com>** Nov 9, 2018, 2:16 PM
>
> to Frank
>
> **About the SAFE, because to date no equity financing has occurred, your SAFE has not triggered to convert into equity.**

78. Plaintiff then asked whether the SAFE converts using the value of BitMEX as calculated at the time of the first purported financing, or the valuation of BitMEX at the time he invested, back in June of 2015. Defendant Hayes only replied, "It's on the valuation at the time of financing."

79. On November 11, 2018, Plaintiff emailed Defendant Hayes to set up a short call that week or the next to discuss his investment. On November 12, 2018, Defendant Hayes delayed the call, stating that "legal" is looking at "our entire financing history" to determine "whether your SAFE converted or not." Defendant Hayes promised to setup a time to speak after legal had reviewed. Weeks passed and there was no follow-up or communication from Defendant Hayes.

80. Two and a half weeks later, on November 28, 2018, Plaintiff wrote again, asking if Defendant Hayes heard back from legal. Plaintiff also inquired why his investment had not already converted to equity given that Defendant Hayes "mentioned that the equity would convert once you finished the China Accelerator program [around Nov 2015]."

81. After several more emails and delay, Defendant Hayes scheduled a call to discuss with Plaintiff the opinion from BitMEX's California attorney regarding the SAFE conversion. At the last minute, Defendant Hayes canceled the call.

82. On January 2, 2019, Defendant Hayes told Plaintiff that BitMEX's attorney had concluded the SAFE had not converted. Defendant Hayes explained that although BitMEX completed the Chinaccelerator program in the Fall of 2015, and even though Chinaccelerator was given 5% equity in BitMEX, the SAFE stood unconverted because Chinaccelerator performed no valuation of BitMEX and did not invest any money into BitMEX. Defendant Hayes also confirmed that Plaintiff was the very first investor into BitMEX. Plaintiff only recently discovered these representations were false.

83. When Plaintiff reached out Defendant Hayes again on February 4, 2019, Defendant Hayes told Plaintiff he was unavailable until March and dismissed Plaintiff's questions regarding the SAFE, telling Plaintiff that "if you have a contrary legal opinion please share it in writing and I can pass onto our legal team."

84. When Plaintiff asked Defendant Hayes for a copy of BitMEX's attorney's conclusion that BitMEX's financing had not triggered Plaintiff's conversion right under the SAFE, Defendant Hayes simply replied that he did not want to play "armchair lawyer":

> **Arthur Hayes** — Thu, Feb 7, 4:24 AM
>
> to Frank
>
> Nothing in writing to share. But if you can put your thoughts down, I can get some answers for you. In any case, I don't want to play armchair lawyer when we do eventually speak on the phone.

85. A month later, after the parties had ceased exchanging emails, Defendant Arthur Hayes tweeted about BitMEX's recent success:




86. Defendants still have not converted Plaintiff's investment in BitMEX into equity.

## CAUSES OF ACTION

### First Cause of Action

### Fraudulent Misrepresentation and/or Concealment

(All Defendants)

87. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

88. Defendants made false statements of material facts concerning Plaintiffs' investment in the Company and Plaintiffs rights as equity-holders of BitMEX.

89. Defendants made several misrepresentations regarding the nature of Plaintiff's investment in BitMEX and Defendants' intent to raise Equity Financing, including but not limited to:

a. Representations beginning in March 2015, that Plaintiff's investment would buy equity in BitMEX.

b. Numerous representations in May and June 2015, that Plaintiff's investment "will convert to preferred shares" in BitMEX and that BitMEX will undergo multiple, additional rounds of financing, including a Series A round.

90. Defendants also made several misrepresentations (and/or failed to disclose material facts) regarding the non-occurrence of events that triggered Plaintiff's equity conversation rights, including but not limited to:

a. On November 9, 2018, Defendants falsely represented to Plaintiff that "because to date no equity financing has occurred, your SAFE has not triggered to convert into equity."

b. On January 2, 2019, Defendants unequivocally represented to Plaintiff that no other individual or entity, including SOSV, had contributed any money and received equity in the Company.

91. On information and belief, Defendants statements above were knowingly false when made because (a) Defendants never intended to convert Plaintiffs' investment into equity and/or (b) SOSV, and other entities and individuals, did in fact make investments in the Company in return for equity in BitMEX.

92. Defendants knew, or recklessly disregarded that BitMEX had received financing, and that Plaintiff's SAFE ought to have converted into equity shares.

93. Defendants intended Plaintiffs to rely on their statements (or omissions of material fact) in order to induce him to refrain from demanding (a) their ownership stake in BitMEX under the terms of the SAFE, (b) past, ongoing, and future dividend payments that were owed, or would be owed, to them as an equity-holder in BitMEX, (c) information, voting, and subscription rights.

94. Plaintiffs did in fact rely on these representations to their determinant in that they have not had the benefit of their equity-holder benefits and have been unable to exercise their rights as equity-holders.

95. Having made numerous representations to Plaintiffs regarding BitMEX's plans for, and the status of, fundraising, upon which Defendants knew Plaintiffs would reasonably rely and upon which Plaintiffs did in fact rely, Defendants had a duty to provide truthful information

regarding the status of such fundraising. Rather than provide such information, Defendants failed to notify Plaintiffs of subsequent fundraising and when asked about the status of fundraising, Defendants concealed the truth or made further misrepresentations.

96. Plaintiffs have suffered damages, and will continue to suffer damages, by these representations and false statements alleged above by Defendants, in an amount to be proven at trial.

97. Defendants are guilty of recklessness, oppression, fraud, or malice. Defendants' conduct was intended to cause injury to Plaintiff, and were carried out with a willful and conscious disregard of Plaintiff's rights.

98. As a direct result of Plaintiff's reliance on Defendants' false representations (and/or omissions of material fact), Plaintiffs suffered damages in an amount to be proven at trial but which is believed to exceed $50,000,000, based on Defendants' multi-billion valuation. Plaintiffs also seek an injunction to preclude Defendants' ongoing misrepresentations and, in addition to actual damages, seek to recover punitive damages, attorneys' fees, costs and other relief, believed to be in excess of $250,000,000, necessary to remediate Defendants' frauds.

**<u>Second Cause of Action</u>**

**Breach of Contract**

(Defendant HDR Global Trading Limited)

99. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

100. Plaintiffs fully performed their obligations to HDR Global Trading Limited including, without limitation, under the parties' SAFE, executed on or about June 15, 2015.

101. Through the conduct alleged above, Defendants have breached their contractual obligations, by, *inter alia*, failing to automatically issue to Plaintiffs a number of shares as calculated under the provisions of the parties' SAFE.

102. As a result of Defendants' intentional and ongoing breaches, Plaintiffs have suffered damages, and will continue to suffer damages, in an amount to be proven at trial.

**Third Cause of Action**

**Breach of Covenant of Good Faith and Fair Dealing**

(Defendant HDR Global Trading Limited)

103. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

104. Plaintiff and HDR Global Trading Limited validly and consensually executed the SAFE on or about June 15, 2015.

105. Plaintiffs fully performed their obligations to HDR Global Trading Limited including, without limitation, under the parties' SAFE.

106. Through the conduct alleged above, HDR Global Trading Limited breached the implied covenant of good faith and fair dealing, by, *inter alia*: (i) deliberately structuring subsequent rounds of capital financing in order to avoid triggering the SAFE; (ii) by failing to inform or notify Plaintiff that the conditions for the triggering of the SAFE have been met; and (iii) by construing the term "Equity Financing" in the SAFE in bad faith in order to avoid performing their obligations thereunder.

107. Through the conduct alleged above, HDR Global Trading Limited unfairly and in bad faith interfered with Plaintiffs' right to receive the benefits of the SAFE as originally contemplated for by the parties, and a result, Plaintiffs have suffered damages, and will continue to suffer damages, in an amount to be proven at trial.

**Fourth Cause of Action**

**Quantum Meruit and/or Unjust Enrichment**

(All Defendants)

108. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

109. Defendants requested Plaintiff to provide several benefits to them, including, as alleged above, his services and his investment into BitMEX.

110. Defendants received these benefits conferred by Plaintiff, including, but not limited to, Plaintiff's $30,000 investment into BitMEX.

111. Defendants' informed Plaintiff, as alleged above, that the purpose of his investment would be to, among other things, continue the development of BitMEX's automated algorithm for trading at leverage, as well pay its vendors and developers and grow the platform.

112. According to Defendants' statements as alleged above, Plaintiff was the first outside investor in BitMEX at a time when it was struggling to attract any venture capitalists to invest into its platform.

113. On information and belief, BitMEX would not have reached its soaring success today, with over $1.10 trillion USD volume of trading on its platform, without Plaintiff's generous and business-saving investment.

114. Defendants have unjustly retained the benefits that Plaintiff conferred at the expense of Plaintiff.

115. Plaintiff was fraudulently induced into conferring the benefits unto Defendants, as Defendants' statements and conduct, as alleged above, led Plaintiff to believe that he would be an equity-holder in BitMEX, and that his investment would grow in value as BitMEX's value grew.

116. As a result of Defendants' unjust enrichment, Plaintiffs seek disgorgement in an amount to be determined at trial.

## <u>Fifth Cause of Action</u>

**Negligent Misrepresentation**

(All Defendants)

117. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

118. Defendants negligently misrepresented to Plaintiff that the SAFE stood unconverted.

119. Defendants were without grounds for believing the truth of such an assertion, because they were aware that, on information and belief, SOSV and several other individuals and entities had invested money into BitMEX, as well had received equity.

120. Defendants had a duty to Plaintiff because they were in exclusive possession of the knowledge of who invested in BitMEX when, and also because Plaintiff had no practicable way to ascertain the veracity of Defendants' statements.

121. Defendants intended Plaintiff to rely on their statements, in order to prevent Plaintiff from exercising his contractual rights under the SAFE.

122. Plaintiff did in fact rely on Defendants' misrepresentations, and refrained from exercising his contractual rights under the SAFE, as well as inquiring as to the veracity of Defendants' statements.

123. As a result of Defendants' negligent misrepresentations, Plaintiffs have suffered, and continue to suffer, damages, in an amount to be proven at trial.

**Sixth Cause of Action**

**Promissory Estoppel**

(All Defendants)

124. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

125. The promise by Defendant Hayes that the SAFE will convert because there will be an equity event was clear and unambiguous.

126. Plaintiff reasonably relied on the promise, to his detriment, in executing the SAFE agreement, committing $30,000 as capital for BitMEX to utilize for its growth and operations. In committing the capital, Plaintiff reasonably and foreseeably relied on Arthur Hayes' and HDR Global Trading Limited's purported performance under the promise.

127. As a result of Plaintiff's reliance, Plaintiffs will suffer unconscionable injury in amounts to be proven at trial if the SAFE, or the promise, is not enforced, and Defendant Hayes and HDR Global Trading Limited will be unjustly enriched if it is allowed to retain the benefits of revenue and equity in BitMEX earned without making payments to Plaintiff, or performing under the terms of the SAFE or the promise.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Frank Amato and RGB Coin Ltd. pray that the Court issue the following relief:

A. Monetary damages in an amount to be determined at trial, reasonably estimated to exceed $50,000,000;

B. Injunctive relief, including an award of Plaintiffs rightful equity interest in BitMEX;

C. Disgorgement;

D. Constructive trust;

E. Attorney's fees and costs;

F. Punitive damages; and

G. All such other and further relief as the Court may deem just, proper, and equitable.

Dated: December 4, 2019

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: ______________________
J. Noah Hagey

*Attorneys for Plaintiffs Frank Amato and RGB Coin Ltd.*

**DEMAND FOR JURY TRIAL**

Plaintiffs Frank Amato and RGB Coin Ltd. hereby demand a jury trial of all claims and causes of action triable before a jury.

Dated: December 4, 2019

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: ______________________
J. Noah Hagey

*Attorneys for Plaintiffs Frank Amato and RGB Coin Ltd.*

# EXHIBIT 1

THIS INSTRUMENT AND ANY SECURITIES ISSUABLE PURSUANT HERETO HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM.

**HDR GLOBAL TRADING LIMITED**

**SAFE**
**(Simple Agreement for Future Equity)**

THIS CERTIFIES THAT in exchange for the payment by Frank Amato (the "**Investor**") of $30,000 USD (the "**Purchase Amount**") on or about June 15th, 2015, HDR Global Trading Limited, a limited liability corporation incorporated in the Republic of Seychelles (the "**Company**"), hereby issues to the Investor the right to certain shares of the Company's share capital, subject to the terms set forth below.

The "**Discount Rate**" is 80.0%.

See **Section 2** for certain additional defined terms.

**1.** ***Events***

(a) **Equity Financing**. If there is an Equity Financing before the expiration or termination of this instrument, the Company will automatically issue to the Investor a number of shares of Safe Preferred Shares equal to the Purchase Amount divided by the Discount Price. In any event, the member of shares of Safe Preferred Shares issued to the Investor shall not exceed 0.50% of the Company's issued and outstanding share capital on a fully-diluted and as converted basis.

In connection with the issuance of Safe Preferred Shares by the Company to the Investor pursuant to this Section 1(a)(i) The Investor will execute and deliver to the Company all transaction documents related to the Equity Financing; *provided*, that such documents are the same documents to be entered into with the purchasers of Standard Preferred Shares, with appropriate variations for the Safe Preferred Shares if applicable, and

(b) **Liquidity Event**. If there is a Liquidity Event before the expiration or termination of this instrument, the Investor will, at its option, either (i) receive a cash payment equal to the Purchase Amount (subject to the following paragraph) or (ii) automatically receive from the Company a number of shares of Common Shares equal to the Purchase Amount divided by the Liquidity Price, if the Investor fails to select the cash option.

In connection with Section (b)(i), the Purchase Amount will be due and payable by the Company to the Investor immediately prior to, or concurrent with, the consummation of the Liquidity Event. If there are not enough funds to pay the Investor and holders of other Safes (collectively, the "**Cash-Out Investors**") in full, then all of the Company's available funds will be distributed with equal priority and *pro rata* among the Cash-Out Investors in proportion to their Purchase Amounts, and the Cash-Out Investors will automatically receive the number of shares of Common Shares equal to the remaining unpaid Purchase Amount divided by the Liquidity Price. In connection with a Change of Control intended to qualify as a tax-free reorganization, the

Company may reduce, *pro rata*, the Purchase Amounts payable to the Cash-Out Investors by the amount determined by its board of directors in good faith to be advisable for such Change of Control to qualify as a tax-free reorganization for U.S. federal income tax purposes, and in such case, the Cash-Out Investors will automatically receive the number of shares of Common Shares equal to the remaining unpaid Purchase Amount divided by the Liquidity Price.

(c) **Dissolution Event**. If there is a Dissolution Event before this instrument expires or terminates, the Company will pay an amount equal to the Purchase Amount, due and payable to the Investor immediately prior to, or concurrent with, the consummation of the Dissolution Event. The Purchase Amount will be paid prior and in preference to any Distribution of any of the assets of the Company to holders of outstanding Share Capital by reason of their ownership thereof. If immediately prior to the consummation of the Dissolution Event, the assets of the Company legally available for distribution to the Investor and all holders of all other Safes (the "**Dissolving Investors**"), as determined in good faith by the Company's board of directors, are insufficient to permit the payment to the Dissolving Investors of their respective Purchase Amounts, then the entire assets of the Company legally available for distribution will be distributed with equal priority and *pro rata* among the Dissolving Investors in proportion to the Purchase Amounts they would otherwise be entitled to receive pursuant to this Section 1(c).

(d) **Termination**. This instrument will expire and terminate (without relieving the Company of any obligations arising from a prior breach of or non-compliance with this instrument) upon either (i) the issuance of shares to the Investor pursuant to Section 1(a) or Section 1(b)(ii); or (ii) the payment, or setting aside for payment, of amounts due the Investor pursuant to Section 1(b)(i) or Section 1(c).

2. ***Definitions***

"**Change of Control**" means (i) a transaction or series of related transactions in which any "person" or "group" (within the meaning of Section 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended), becomes the "beneficial owner" (as defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended), directly or indirectly, of more than 50% of the outstanding voting securities of the Company having the right to vote for the election of members of the Company's board of directors, (ii) any reorganization, merger or consolidation of the Company, other than a transaction or series of related transactions in which the holders of the voting securities of the Company outstanding immediately prior to such transaction or series of related transactions retain, immediately after such transaction or series of related transactions, at least a majority of the total voting power represented by the outstanding voting securities of the Company or such other surviving or resulting entity or (iii) a sale, lease or other disposition of all or substantially all of the assets of the Company.

"**Discount Price**" means the price per share of the Standard Preferred Shares sold in the Equity Financing multiplied by the Discount Rate.

"**Distribution**" means the transfer to holders of Shares Capital by reason of their ownership thereof of cash or other property without consideration whether by way of dividend or otherwise, other than dividends on Common Shares payable in Common Shares, or the purchase or redemption of Share Capital by the Company or its subsidiaries for cash or property other than: (i) repurchases of Common Shares held by employees, officers, directors or consultants of the Company or its subsidiaries pursuant to an agreement providing, as applicable, a right of first refusal or a right to repurchase shares upon termination of such service provider's employment or services; or (ii) repurchases of Share Capital in connection with the settlement of disputes with any shareholder.

"**Dissolution Event**" means (i) a voluntary termination of operations, (ii) a general assignment for the benefit of the Company's creditors or (iii) any other liquidation, dissolution or winding up of the Company (**excluding** a Liquidity Event), whether voluntary or involuntary.

"**Equity Financing**" means a bona fide transaction or series of transactions with the principal purpose of raising capital, pursuant to which the Company issues and sells Preferred Shares at a fixed pre-money valuation.

"**Initial Public Offering**" means the closing of the Company's first firm commitment underwritten initial public offering of Common Shares pursuant to a registration statement filed under the Securities Act.

"**Liquidity Event**" means a Change of Control or an Initial Public Offering.

"**Liquidity Price**" means the price per share equal to: the fair market value of the Common Shares at the time of the Liquidity Event, as determined by reference to the purchase price payable in connection with such Liquidity Event, multiplied by the Discount Rate.

"**Safe**" means an instrument containing a future right to shares of Share Capital, similar in form and content to this instrument, purchased by investors for the purpose of funding the Company's business operations.

"**Safe Preferred** Shares" means the shares of a series of Preferred Shares issued to the Investor in an Equity Financing, having the identical rights, privileges, preferences and restrictions as the shares of Standard Preferred Shares, other than with respect to: (i) the per share liquidation preference and the conversion price for purposes of price-based anti-dilution protection, which will equal the Discount Price; and (ii) the basis for any dividend rights, which will be based on the Discount Price.

"**Share Capital**" means the share capital of the Company, including, without limitation, the "**Common Shares**" and the "**Preferred Shares.**"

"**Standard Preferred** Shares" means the shares of a series of Preferred Shares issued to the investors investing new money in the Company in connection with the initial closing of the Equity Financing.

3. ***Company Representations***

(a) The Company is a corporation duly organized, validly existing and in good standing under the laws of the state of its incorporation, and has the power and authority to own, lease and operate its properties and carry on its business as now conducted.

(b) The execution, delivery and performance by the Company of this instrument is within the power of the Company and, other than with respect to the actions to be taken when equity is to be issued to the Investor, has been duly authorized by all necessary actions on the part of the Company. This instrument constitutes a legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity. To the knowledge of the Company, it is not in violation of (i) its current certificate of incorporation or bylaws, (ii) any material statute, rule or regulation applicable to the Company or (iii) any material indenture or contract to which the Company is a party or by which it is bound, where, in each case, such violation or default,

individually, or together with all such violations or defaults, could reasonably be expected to have a material adverse effect on the Company.

(c) The performance and consummation of the transactions contemplated by this instrument do not and will not: (i) violate any material judgment, statute, rule or regulation applicable to the Company; (ii) result in the acceleration of any material indenture or contract to which the Company is a party or by which it is bound; or (iii) result in the creation or imposition of any lien upon any property, asset or revenue of the Company or the suspension, forfeiture, or nonrenewal of any material permit, license or authorization applicable to the Company, its business or operations.

(d) No consents or approvals are required in connection with the performance of this instrument, other than: (i) the Company's corporate approvals; (ii) any qualifications or filings under applicable securities laws; and (iii) necessary corporate approvals for the authorization of Share Capital issuable pursuant to Section 1.

(e) To its knowledge, the Company owns or possesses (or can obtain on commercially reasonable terms) sufficient legal rights to all patents, trademarks, service marks, trade names, copyrights, trade secrets, licenses, information, processes and other intellectual property rights necessary for its business as now conducted and as currently proposed to be conducted, without any conflict with, or infringement of the rights of, others.

4. ***Investor Representations***

(a) The Investor has full legal capacity, power and authority to execute and deliver this instrument and to perform its obligations hereunder. This instrument constitutes valid and binding obligation of the Investor, enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

(b) The Investor is an accredited investor as such term is defined in Rule 501 of Regulation D under the Securities Act. The Investor has been advised that this instrument and the underlying securities have not been registered under the Securities Act, or any state securities laws and, therefore, cannot be resold unless they are registered under the Securities Act and applicable state securities laws or unless an exemption from such registration requirements is available. The Investor is purchasing this instrument and the securities to be acquired by the Investor hereunder for its own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof, and the Investor has no present intention of selling, granting any participation in, or otherwise distributing the same. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of such investment, is able to incur a complete loss of such investment without impairing the Investor's financial condition and is able to bear the economic risk of such investment for an indefinite period of time.

5. ***Miscellaneous***

(a) Any provision of this instrument may be amended, waived or modified only upon the written consent of the Company and the Investor.

(b) Any notice required or permitted by this instrument will be deemed sufficient when delivered personally or by overnight courier or sent by email to the relevant address listed on the signature page, or 48 hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address listed on the signature page, as subsequently modified by written notice.

(c) The Investor is not entitled, as a holder of this instrument, to vote or receive dividends or be deemed the holder of Share Capital for any purpose, nor will anything contained herein be construed to confer on the Investor, as such, any of the rights of a shareholder of the Company or any right to vote for the election of directors or upon any matter submitted to shareholders at any meeting thereof, or to give or withhold consent to any corporate action or to receive notice of meetings, or to receive subscription rights or otherwise until shares have been issued upon the terms described herein.

(d) Neither this instrument nor the rights contained herein may be assigned, by operation of law or otherwise, by either party without the prior written consent of the other; *provided, however*, that this instrument and/or the rights contained herein may be assigned without the Company's consent by the Investor to any other entity who directly or indirectly, controls, is controlled by or is under common control with the Investor, including, without limitation, any general partner, managing member, officer or director of the Investor, or any venture capital fund now or hereafter existing which is controlled by one or more general partners or managing members of, or shares the same management company with, the Investor; and *provided, further*, that the Company may assign this instrument in whole, without the consent of the Investor, in connection with a reincorporation to change the Company's domicile.

(e) In the event any one or more of the provisions of this instrument is for any reason held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this instrument operate or would prospectively operate to invalidate this instrument, then and in any such event, such provision(s) only will be deemed null and void and will not affect any other provision of this instrument and the remaining provisions of this instrument will remain operative and in full force and effect and will not be affected, prejudiced, or disturbed thereby.

(f) All rights and obligations hereunder will be governed by the laws of the State of California, without regard to the conflicts of law provisions of such jurisdiction.

(*Signature page follows*)

IN WITNESS WHEREOF, the undersigned have caused this instrument to be duly executed and delivered.

**HDR GLOBAL TRADING LIMITED**

By:
Arthur Hayes
Director

Address:
2/F, Capital City
Independence Ave,
P.O. Box 1008 Victoria
Mahe, Seychelles
Email: arthur@bitmex.com

**INVESTOR:**

By: [illegible]

Name: FRANK AWAN

Title: INVESTOR

Address: [redacted]

Email: [redacted]

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, ... r number, and address):
J. Noah Hagey, Esq. (SBN: 262331), ... rew Levine, Esq. (SBN: 278246)
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
TELEPHONE NO.: (415) 599-0210 FAX NO.: (415) 276-1808
ATTORNEY FOR (Name): Frank Amato and RGB Coin LTD., Plaintiffs

FOR COURT USE ONLY

FILED
San Francisco County Superior Court
DEC 04 2019
CLERK OF THE COURT
BY: [signature]
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Frank Amato and RGB Coin LTD. v. HDR Global Trading Limited, et al.

**CIVIL CASE COVER SHEET**

☑ **Unlimited** (Amount demanded exceeds $25,000) ☐ **Limited** (Amount demanded is $25,000 or less)

**Complex Case Designation**
☐ **Counter** ☐ **Joinder**
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: CGC-19-581267
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☑ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☑ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify)*: (1) COMMON LAW FRAUD AND/OR FRAUDULENT INDUCEMENT; (2) BREACH OF CONTRACT; (3) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (4) QUANTUM MERUIT AND/OR UNJUST ENRICHMENT; (5) NEGLIGENT MISREPRESENTATION; AND (6) PROMISSORY ESTOPPEL
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/04/2019
J. Noah Hagey
(TYPE OR PRINT NAME)
[signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

## INSTR . IONS ON HOW TO COMPLETE THE CO SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

# NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **MAY-06-2020**

**TIME:** **10:30AM**

**PLACE:** **Department 610**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400 McAllister Street, Room 103-A**
**San Francisco, CA 94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

# Superior Court of California, County of San Francisco
# Alternative Dispute Resolution
# Information Package

The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**<u>Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint</u>**

**WHAT ARE THE ADR OPTIONS?**

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

**2) MEDIATION**

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

**3) ARBITRATION**

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION**

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION**

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

**HOW DO I PARTICIPATE IN ADR?**

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*)<br><br>TELEPHONE NO.:<br><br>ATTORNEY FOR *(Name):* | ***FOR COURT USE ONLY*** |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: ______________________<br><br>**DEPARTMENT 610** |

**1) The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): ________________________________

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days ☐ 90-120 days ☐ Other (please specify) ____________________

☐ **Other ADR process** (describe) ________________________________________________________________

**2) The parties agree that the ADR Process shall be completed by (date):** ____________________________

**3) Plaintiff(s) and Defendant(s) further agree as follows:**

_____________________________________________________________________________________

| | |
|---|---|
| ________________________________<br>Name of Party Stipulating | ________________________________<br>Name of Party Stipulating |
| ________________________________<br>Name of Party or Attorney Executing Stipulation | ________________________________<br>Name of Party or Attorney Executing Stipulation |
| ________________________________<br>Signature of Party or Attorney | ________________________________<br>Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: ____________________________ | Dated: ____________________________ |

☐ ***Additional signature(s) attached***

| *Attorney or Party without Attorney:* | | | | *For Court Use Only* |
|---|---|---|---|---|
| J. NOAH HAGEY ESQ., Bar #262331<br>BRAUNHAGEY & BORDEN LLP<br>351 CALIFORNIA STREET<br>10TH FLOOR<br>SAN FRANCISCO, CA 94104<br>*Telephone No:* 415-599-0210 *FAX No:* 415-276-1808 | | | | ELECTRONICALLY<br>**FILED**<br>*Superior Court of California, County of San Francisco*<br>**12/17/2019**<br>**Clerk of the Court**<br>**BY: YOLANDA TABO-RAMIREZ**<br>**Deputy Clerk** |
| *Attorney for:* Plaintiffs | | *Ref. No. or File No.:* FRANK AMATO | | |
| *Insert name of Court, and Judicial District and Branch Court:* SAN FRANCISCO County SUPERIOR Court | | | | |
| *Plaintiffs:* FRANK AMATO, ET AL.<br>*Defendant:* HDR GLOBAL TRADING LIMITED, ET AL. | | | | |
| **PROOF OF SERVICE SUMMONS** | *Hearing Date:* Wed, May. 06, 2020 | *Time:* 10:30AM | *Dept/Div:* 610 | *Case Number:* CGC-19-581267 |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS COMPLAINT; CIVIL CASE COVER SHEET; NOTICE TO PLAINTIFF; SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE

3. a. *Party served:* ARTHUR HAYES
   b. *Person served:* BETTINA DAVID, ACCOUNTING MANAGER

4. *Address where the party was served:* 340 BRANNAN STREET
   2ND FLOOR
   SAN FRANCISCO, CA 94107

5. *I served the party:*
   b. **by substituted service.** On: Wed., Dec. 04, 2019 at: 3:24PM By Leaving Copies in the Presence of the Subject
   BETTINA DAVID, ACCOUNTING MANAGER
   (1) **(Business)** a Person in charge at least 18 years of age apparently in charge of the office or usual place of business of the person served. I informed him or her of the general nature of the papers.
   (4) A declaration of mailing is attached.
   (5) I attach a declaration of diligence stating actions taken first to attempt personal service.

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
   a. as an individual defendant

7. ***Person Who Served Papers:***
   a. FAITH MARSHALL
   **b. One Hour Delivery Service**
   2920 Camino Diablo Ste. 100
   WALNUT CREEK, CA 94597
   c. 925-947-3470, FAX 925-947-3480

   Recoverable Cost Per CCP 1033.5(a)(4)(B)
   d. *The Fee for Service was:* $79.50
   e. I am: (3) registered California process server
   *(i)* Independent Contractor
   *(ii) Registration No.:* 1409
   *(iii) County:* SAN FRANCISCO

8. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

***Date: Thu, Dec. 05, 2019***

(FAITH MARSHALL)

| *Attorney or Party without Attorney:* J. NOAH HAGEY ESQ., Bar #262331<br>BRAUNHAGEY & BORDEN LLP<br>351 CALIFORNIA STREET<br>10TH FLOOR<br>SAN FRANCISCO, CA 94104<br>*Telephone No:* 415-599-0210 *FAX: No:* 415-276-1808 | | | | *For Court Use Only* |
|---|---|---|---|---|
| *Attorney for:* Plaintiffs | *Ref. No or File No.:* FRANK AMATO | | | |
| *Insert name of Court, and Judicial District and Branch Court:* SAN FRANCISCO County SUPERIOR Court | | | | |
| *Plaintiffs:* FRANK AMATO, ET AL.<br>*Defendant:* HDR GLOBAL TRADING LIMITED, ET AL. | | | | |
| **AFFIDAVIT OF REASONABLE DILIGENCE** | *Hearing Date:* Wed, May. 06, 2020 | *Time:* 10:30am | *Dept/Div:* 610 | *Case Number:* CGC-19-581267 |

1. I, FAITH MARSHALL, and any employee or independent contractors retained by One Hour Delivery Service are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on Defendant ARTHUR HAYES as follows:

2. *Documents:* SUMMONS COMPLAINT; CIVIL CASE COVER SHEET; NOTICE TO PLAINTIFF; SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE.

| Day | Date | Time | Location | Results |
|---|---|---|---|---|
| Wed | 12/04/19 | 3:24pm | Business | Substituted Service on: ARTHUR HAYES Business - 340 BRANNAN STREET 2ND FLOOR SAN FRANCISCO, CA 94107 by Serving: BETTINA DAVID, ACCOUNTING MANAGER a Person in charge at least 18 years of age apparently in charge of the office or usual place of business of the person served. Served by: FAITH MARSHALL |

3. *Person Executing*
   a. FAITH MARSHALL
   **b. One Hour Delivery Service**
   2920 Camino Diablo Ste. 100
   WALNUT CREEK, CA 94597
   c. 925-947-3470, FAX 925-947-3480

**Recoverable Costs Per CCP 1033.5(a)(4)(B)**
*d. The Fee for service was:* $79.50
*e. I am:* (3) Independent Contractor of Registered California Pr

4. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***
   Date: Thu, Dec. 05, 2019

(FAITH MARSHALL)

656092.braunjh.83756

**AFFIDAVIT OF REASONABLE DILIGENCE**

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>J. NOAH HAGEY ESQ., Bar #262331<br>BRAUNHAGEY & BORDEN LLP<br>351 CALIFORNIA STREET<br>10TH FLOOR<br>SAN FRANCISCO, CA 94104<br>*Telephone No:* 415-599-0210 *FAX No:* 415-276-1808<br>*Attorney for:* Plaintiffs — *Ref. No or File No.:* FRANK AMATO | *For Court Use Only* |
| *Insert name of Court, and Judicial District and Branch Court:*<br>SAN FRANCISCO County SUPERIOR Court | |
| *Plaintiffs:* FRANK AMATO, ET AL.<br>*Defendant:* HDR GLOBAL TRADING LIMITED, ET AL. | |

| **PROOF OF SERVICE By Mail** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:* |
|---|---|---|---|---|
| | Wed, May. 06, 2020 | 10:30AM | 610 | CGC-19-581267 |

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.

2. I served copies of the SUMMONS COMPLAINT; CIVIL CASE COVER SHEET; NOTICE TO PLAINTIFF; SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE

3. By placing a true copy of each document in the United States mail, in a sealed envelope by **First Class** mail with postage prepaid as follows:

   a. Date of Mailing: Thu., Dec. 05, 2019
   b. Place of Mailing: WALNUT CREEK, CA 94597
   c. Addressed as follows: ARTHUR HAYES
   340 BRANNAN STREET
   2ND FLOOR
   SAN FRANCISCO, CA 94107

4. I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Thu., Dec. 05, 2019 in the ordinary course of business.

5. *Person Serving:*
   a. PETER HOUSE
   b. One Hour Delivery Service
   2920 Camino Diablo Ste. 100
   WALNUT CREEK, CA 94597
   c. 925-947-3470, FAX 925-947-3480

   Recoverable Cost Per CCP 1033.5(a)(4)(B)
   d. ***The Fee** for Service was:* $79.50
   e. I am: (3) registered California process server
   *(i)* Employee
   *(ii) Registration No.:* 641
   *(iii) County:* CONTRA COSTA

***8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

***Date: Thu, Dec. 05, 2019***

(PETER HOUSE)

*Attorney or Party without Attorney:*
J. NOAH HAGEY ESQ., Bar #262331
BRAUNHAGEY & BORDEN LLP
351 CALIFORNIA STREET
10TH FLOOR
SAN FRANCISCO, CA 94104
*Telephone No:* 415-599-0210 *FAX No:* 415-276-1808
*Attorney for:* Plaintiffs

*Ref. No. or File No.:* FRANK AMATO

*For Court Use Only*

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**12/17/2019**
**Clerk of the Court**
BY: YOLANDA TABO-RAMIREZ
Deputy Clerk

*Insert name of Court, and Judicial District and Branch Court:*
SAN FRANCISCO County SUPERIOR Court

*Plaintiffs:* FRANK AMATO, ET AL.
*Defendant:* HDR GLOBAL TRADING LIMITED, ET AL.

| PROOF OF SERVICE SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|
| | Wed, May. 06, 2020 | 10:30AM | 610 | CGC-19-581267 |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; NOTICE TO PLAINTIFF; SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE

3. *a. Party served:* HDR GLOBAL TRADING LIMITED, D/B/A BITMEX
   *b. Person served:* BETTINA DAVID, ACCOUNTING MANAGER

4. *Address where the party was served:* C/O ARTHUR HAYES, CEO
   340 BRANNAN STREET
   2ND FLOOR
   SAN FRANCISCO, CA 94107

5. *I served the party:*
   b. **by substituted service.** On: Wed., Dec. 04, 2019 at: 3:24PM By Leaving Copies in the Presence of the Subject
   BETTINA DAVID, ACCOUNTING MANAGER
   (1) **(Business)** a Person in charge at least 18 years of age apparently in charge of the office or usual place of business of the person served. I informed him or her of the general nature of the papers.
   (4) A declaration of mailing is attached.

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
   *on behalf of:* HDR GLOBAL TRADING LIMITED, D/B/A BITMEX
   Under CCP 416.10 (corporation)

7. ***Person Who Served Papers:***
   a. FAITH MARSHALL
   **b. One Hour Delivery Service**
   2920 Camino Diablo Ste. 100
   WALNUT CREEK, CA 94597
   c. 925-947-3470, FAX 925-947-3480

   Recoverable Cost Per CCP 1033.5(a)(4)(B)
   d. *The Fee for Service was:* $144.50
   e. I am: (3) registered California process server
   *(i)* Independent Contractor
   *(ii) Registration No.:* 1409
   *(iii) County:* SAN FRANCISCO

8. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

***Date: Thu, Dec. 05, 2019***

(FAITH MARSHALL)

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| J. NOAH HAGEY ESQ., Bar #262331<br>BRAUNHAGEY & BORDEN LLP<br>351 CALIFORNIA STREET<br>10TH FLOOR<br>SAN FRANCISCO, CA 94104<br>Telephone No: 415-599-0210 FAX No: 415-276-1808 | | |
| Attorney for: Plaintiffs | Ref. No or File No.: FRANK AMATO | |
| Insert name of Court, and Judicial District and Branch Court: SAN FRANCISCO County SUPERIOR Court | | |
| Plaintiffs: FRANK AMATO, ET AL.<br>Defendant: HDR GLOBAL TRADING LIMITED, ET AL. | | |

| **PROOF OF SERVICE By Mail** | Hearing Date: Wed, May. 06, 2020 | Time: 10:30AM | Dept/Div: 610 | Case Number: CGC-19-581267 |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.

2. I served copies of the SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; NOTICE TO PLAINTIFF; SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE

3. By placing a true copy of each document in the United States mail, in a sealed envelope by **First Class** mail with postage prepaid as follows:

   a. Date of Mailing: Thu., Dec. 05, 2019
   b. Place of Mailing: WALNUT CREEK, CA 94597
   c. Addressed as follows: HDR GLOBAL TRADING LIMITED, D/B/A BITMEX
   C/O ARTHUR HAYES, CEO
   340 BRANNAN STREET
   2ND FLOOR
   SAN FRANCISCO, CA 94107

4. I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Thu., Dec. 05, 2019 in the ordinary course of business.

5. *Person Serving:*
   a. PETER HOUSE
   b. One Hour Delivery Service
   2920 Camino Diablo Ste. 100
   WALNUT CREEK, CA 94597
   c. 925-947-3470, FAX 925-947-3480

Recoverable Cost Per CCP 1033.5(a)(4)(B)

d. ***The Fee** for Service was:* $144.50
e. I am: (3) registered California process server
   *(i)* Employee
   *(ii) Registration No.:* 641
   *(iii) County:* CONTRA COSTA

***8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

***Date: Thu, Dec. 05, 2019***

(PETER HOUSE)

*Attorney or Party without Attorney:*
J. NOAH HAGEY ESQ., Bar #262331
BRAUNHAGEY & BORDEN LLP
351 CALIFORNIA STREET
10TH FLOOR
SAN FRANCISCO, CA 94104
*Telephone No:* 415-599-0210 *FAX No:* 415-276-1808
*Attorney for:* Plaintiffs

*Ref. No. or File No.:* FRANK AMATO

*For Court Use Only*

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**12/17/2019**
**Clerk of the Court**
BY: YOLANDA TABO-RAMIREZ
Deputy Clerk

*Insert name of Court, and Judicial District and Branch Court:*
SAN FRANCISCO County SUPERIOR Court

*Plaintiffs:* FRANK AMATO, ET AL.
*Defendant:* HDR GLOBAL TRADING LIMITED, ET AL.

| PROOF OF SERVICE SUMMONS | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:* |
|---|---|---|---|---|
| | Wed, May. 06, 2020 | 10:30AM | 610 | CGC-19-581267 |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS COMPLAINT; CIVIL CASE COVER SHEET; NOTICE TO PLAINTIFF; SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE

3. a. *Party served:* HDR GLOBAL TRADING LIMITED, D/B/A BITMEX THROUGH ITS SUBSIDIARY AND GENERAL MANAGER, ABS GLOBAL TRADING LIMITED

   b. *Person served:* AGENT FOR SERVICE, CORPORATE CREATIONS NETWORK INC., BY LEAVING WITH CHRISTIAN LARRANAGA, ADMINISTRATIVE ASSISTANT

4. *Address where the party was served:* AGENT: CORPORATE CREATIONS NETWORK INC.
   4640 ADMIRALTY WAY
   5TH FLOOR
   MARINA DEL REY, CA 90292

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Fri., Dec. 06, 2019 (2) at: 4:30PM

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
   *on behalf of:* HDR GLOBAL TRADING LIMITED, D/B/A BITMEX THROUGH ITS SUBSIDIARY AND GENERAL MANAGER, ABS GLOBAL TRADING LIMITED
   Under CCP 416.10 (corporation)

7. ***Person Who Served Papers:***
   a. BRAD WEEKES
   **b. One Hour Delivery Service**
   2920 Camino Diablo Ste. 100
   WALNUT CREEK, CA 94597
   c. 925-947-3470, FAX 925-947-3480

   Recoverable Cost Per CCP 1033.5(a)(4)(B)
   d. *The Fee for Service was:* $119.75
   e. I am: (3) registered California process server
   *(i)* Independent Contractor
   *(ii) Registration No.:* 3185
   *(iii) County:* LOS ANGELES

8. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

***Date: Mon, Dec. 09, 2019***



(BRAD WEEKES)

656217 .braunjh.83802

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

ELECTRONICALLY
FILED
Superior Court of California,
County of San Francisco
12/17/2019
Clerk of the Court
BY: YOLANDA TABO-RAMIREZ
Deputy Clerk

| | |
|---|---|
| FRANK AMATO and RGB COIN LTD., Plaintiffs, v. HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; and DOES 1-10, Defendants. | Case No. CGC-19-581267<br>**AFFIDAVIT OF SERVICE** |

I, Faith Marshall, being duly sworn, deposes and states the following:

1. I am a process server, independently contracted by One Hour Legal, located at 2920 Camino Diablo, #100, Walnut Creek, CA 94597, which can be reached by telephone at 888-311-1221. I am over the age of eighteen years and am not a party to the above-captioned action.

2. I have delivered service of process approximately 185 times throughout my employment as a process server.

3. On December 4, 2019, I was given the task by One Hour Legal of delivering service of process to the two listed defendants in the above-captioned matter, HDR Global Trading Limited, doing business as BitMEX, and Mr. Hayes, at what I understood to be BitMEX's San Francisco office address at 340 Brannan St., 2nd Floor, San Francisco, California 94107.

4. At approximately 3:24pm on 12/4/19, I arrived outside the Brannan Street location's bottom floor, which is a secured building with an intercom system.

5. I used the intercom system to call up a listing for Suite 200, called ABS Global Trading Limited.

6. I was answered on the intercom by a female voice. I told them that I had a delivery for Mr. Hayes and BitMEX and was let into the building through the elevator bank. I rode the elevator to the second floor.

7. There, I met an individual who affirmatively identified herself as Bettina David, Accounting Manager. She had the following characteristics:

Sex: *Female*

Race: *Mixed/Asian*

Hair: *Dark*

Eyes: *Dark*

Approximate Age: *45*

Height: *5'3"*

Weight: *115 lbs*

8. I told Ms. Davis that I had a delivery for Mr. Hayes and BitMEX.

9. Bettina David stated she was authorized to accept documents for Mr. Hayes and BitMEX.

10. I asked if she would accept service on behalf of both BitMEX and Mr. Hayes and she said yes.

11. I personally handed her two sets of the below-listed documents, for each of the above-captioned defendants, which she accepted. Ms. David also stated that she gets documents to Mr. Hayes.

a. the Complaint;

b. the Civil Case Cover Sheet;

c. the Summons;

d. the Notice to Plaintiff; and

e. Superior Court of California, County of San Francisco's Alternative Dispute Resolution Information Package.

By: Faith Marshall
Faith Marshall

Sworn to before me this
12 day of December, 2019.

Sylvia Doneza
Notary Public

SYLVIA DONEZA
COMM. #2235159
Notary Public - California
San Mateo County
My Comm. Expires Mar. 22, 2022
NR01

J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Andrew Levine, Esq. (SBN: 278246)
levine@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ELECTRONICALLY
FILED
*Superior Court of California, County of San Francisco*
12/17/2019
Clerk of the Court
BY: YOLANDA TABO-RAMIREZ
Deputy Clerk

ATTORNEYS FOR PLAINTIFFS
FRANK AMATO and RGB COIN LTD.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

FRANK AMATO and RGB COIN LTD.,

Plaintiffs,

v.

HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; and DOES 1-10,

Defendants.

**Case No. CGC-19-581267**

**PROOF OF SERVICE**

I, Cameron Baker, declare:

I am over the age of 18 years and not a party to this action. My business address is BraunHagey & Borden LLP; 351 California Street, 10th Floor; San Francisco, CA 94104 which is located in the county where the service described below occurred.

On December 5, 2019, I deposited the following document(s):

1. **CIVIL CASE COVER SHEET**
2. **SUMMONS**
3. **COMPLAINT FOR (1) FRAUDULENT MISPREPRESENTATION AND/OR CONCEALMENT; (2) BREACH OF CONTRACT; (3) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (4) QUANTUM MERUIT AND/OR UNJUST ENRICHMENT; (5) NEGLIGENT MISREPRESENTATION; AND (6) PROMISSORY ESTOPPEL**
4. **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE**
5. **NOTICE TO PLAINTIFF**

in a sealed envelope with delivery fees paid or provided for, addressed to:

Arthur Hayes
340 Brannan Street, 2nd Floor
San Francisco, CA 94107

HDR Global Trading Limited
340 Brannan Street, 2nd Floor
San Francisco, CA 94107

in a facility regularly maintained by FedEx, an express service carrier. Additionally, I served the above parties via Certified Mail, with all fees paid or provided for.

I certify and declare under penalty of perjury that the foregoing is true and correct.

Cameron Baker

J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Andrew Levine, Esq. (SBN: 278246)
levine@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFFS
FRANK AMATO and RGB COIN LTD.

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*
**12/17/2019**
**Clerk of the Court**
**BY: YOLANDA TABO-RAMIREZ**
**Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

FRANK AMATO and RGB COIN LTD.,

Plaintiffs,

v.

HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; and DOES 1-10,

Defendants.

**Case No. CGC-19-581267**

**PROOF OF SERVICE**

I, Cameron Baker, declare:

I am over the age of 18 years and not a party to this action. My business address is BraunHagey & Borden LLP, 351 California Street, 10th Floor, San Francisco, CA 94104 which is located in the county where the service described below occurred.

I certify that on December 17, 2019, I placed all pages of the document(s) listed below in a sealed envelope addressed to the party(ies) listed below, and caused such envelope to be delivered via USPS.

**Documents served:**

1. **AFFIDAVIT OF SERVICE**
2. **PROOF OF SERVICE SUMMONS (ARTHUR HAYES)**
3. **PROOF OF SERVICE SUMMONS (HDR GLOBAL TRADING LIMITED)**
4. **PROOF OF SERVICE SUMMONS (HDR GLOBAL TRADING LIMITED)**
5. **PROOF OF SERVICE**

**Party served:**

Derek Göbel
Global General Counsel at BitMEX
340 Brannan Street, 2nd Floor
San Francisco, CA 94107

I certify and declare under penalty of perjury that the foregoing is true and correct.

Cameron Baker